CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
MAR 21 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| CARRIE A. LEESON, | ) | CASE NO. 5:12CV00033 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's April 23, 2008 protectively-filed applications for a period of disability and disability insurance benefits and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING, in part, the plaintiff's motion for summary judgment, DENYING the Commissioner's motion for summary judgment, and REMANDING this case to the Commissioner.

In a decision dated December 20, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had worked since her alleged disability onset date, January 1, 2008, and had performed work at the level of substantial gainful activity while working in a Marshall's

warehouse.[1] [2] (R. 14.) However, he found that that plaintiff was given special accommodation related to her hearing loss, was fired from this position shortly after her hearing before the Law Judge, and, at the time of his decision, was unable to perform her past relevant work there. *Id.* Accordingly, he continued through the sequential evaluation.[3] The Law Judge then determined plaintiff's sensorineural hearing loss was a severe impairment,[4] but he concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment.[5] (R. 14-15.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with several non-exertional limitations. (R. 15-20.) He determined that plaintiff suffers a moderate limitation in hearing and should avoid concentrated exposure to noise. *Id.* He found that with a hearing aid, plaintiff could hear normal speech, but that she would have some trouble with a noisy environment and with directional hearing. *Id.* Finally, he found that plaintiff should avoid hazards. *Id.*

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (2004). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which is December 31, 2014. *See* 20 C.F.R. § 404.131(a); (R. 14, 70.)

[2] Substantial gainful activity is "work activity that involves doing significant physical or mental activities," and it is typically determined by the amount of a claimant's earnings. *See* 20 C.F.R. § 404.1574.

[3] The sequential evaluation is a five step process used by the Commissioner to evaluate whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4).

[4] A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

[5] Though one of state agency examiners found that plaintiff did meet Listing 2.08(A), the Law Judge found that his opinion was not supported by the record, and plaintiff does not contest the point. (R. 20, 213; Dkt. No.14, at 7, fn 2.)

The Law Judge relied on portions of the testimony of Gerald K. Wells, Ph.D., CRC, a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC determination. (R. 20-21, 475-486.) Based on this testimony, the Law Judge determined that plaintiff was capable of performing her past relevant work as an office worker. (R. 20.) However, he proceeded to determine that, alternatively, there were jobs that existed in significant numbers in the local and national economy which plaintiff could perform; specifically, a night cleaner, data entry clerk, and office helper. (R. 20-21.) Accordingly, the Law Judge found that plaintiff was not disabled. (R. 22.)

Plaintiff appealed the Law Judge's December 20, 2010 decision to the Appeals Council. (R. 5-7.) In its February 21, 2012 notice of action, the Appeals Council found no basis to review the Law Judge's decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. *Id.* This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council

considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

In her brief in support of her motion for summary judgment, plaintiff challenged the final decision of the Commissioner on several grounds. First, plaintiff argues that the Law Judge's RFC assessment and credibility determination are not supported by substantial evidence. (Dkt. No. 14, at 4-6.) Second, plaintiff contends that the Law Judge erred by finding that plaintiff suffers only a moderate hearing limitation, arguing that plaintiff is far more limited than the Law Judge determined. *Id.* at 7. Finally, plaintiff argues that the Law Judge erred by finding that plaintiff can perform her past relevant work as an office worker/helper, contending that the job did not rise to the level of past relevant work. *Id.* at 8-9. The undersigned will address each challenge below.

The Law Judge discussed plaintiff's medical record in detail, and there is a supporting evidence for his conclusion that plaintiff is not as limited as she generally believes. As the Law Judge found, the record clearly demonstrates that plaintiff's sensorineural hearing loss is a severe impairment. Plaintiff has suffered hearing limitations and frequent ear infections since she was a very young child. (R. 356-358.) This hearing deficit has proven to be progressive. In December of 1987, plaintiff was found to have normal hearing at frequencies of 250, 1000, and 4000 Hz in her right ear and at 250 through 1000 Hz in her left ear. (R. 357.) She was also found to have mild hearing loss at frequencies of 1500 to 2000 Hz and borderline normal hearing at 8000 Hz in her right ear and a moderate hearing loss above 1000 Hz in her left ear. *Id.* By February 2002, plaintiff's hearing loss was then described as moderate to moderately severe in her right ear and

4

moderately severe to severe in her left ear. (R. 341.) Casey Morehouse of the Virginia School for the Deaf and the Blind found that plaintiff's thresholds "showed significant decline since her last evaluation, especially in her left ear." *Id.* Her examination revealed that plaintiff's receptions thresholds were 45-50 dB in her right ear and 60-65 dB in her left, with speech discrimination scores of 92% in her right ear at 80 dB and 68% in her left ear at 90 dB. *Id.* However, with hearing aids, plaintiff's reception thresholds were 25 dB, with aided speech discrimination scores of 88% and 92% in her left and right ears at 50 dB, or 100% when both hearing aids were worn. *Id.* Similarly, Thomas W. Futrell, M.D. opined in October 2003 that plaintiff had moderately severe to severe nerve type hearing loss in both ears requiring hearing aids. (R. 205.)

By July and August of 2008, plaintiff had stopped wearing her left hearing aid because she did not believe that it was providing sufficient gain in useful hearing. (R. 206-208.) However, she reported no problem with the function of the same hearing aids that she had been using for the last 15-20 years, and Michael R. Plautz, M.D., opined that part of her hearing loss in her left ear was a result of cerumen impaction, with granulation and inflammation interfering with her use of hearing aids. *Id.* In an audiological evaluation performed on October 24, 2008, plaintiff was found to experience moderate to severe sensorineural hearing loss in her right ear and mild to profound, sloping, sensorineural hearing loss in her left. (R. 209.) Plaintiff's speech reception thresholds were found to be 55 dB in her right ear and 80 dB in her left. *Id.* Word recognition was 96% at 95 dB in her right ear, 0% at 50 dB in her right ear, and 0% at 100 dB in her left. *Id.* However, with amplification, plaintiff's speech threshold was 45 dB in her right ear without visual cues, and she could identify 44% of words at 50 dB. *Id.* Julie Farrar-Hersch, Ph.D. recommended that plaintiff have visual cues to aid her in communication, and that

5

assistance be sought so that plaintiff could acquire an appropriate hearing aid, as she had excellent potential for speech discrimination in her right ear. (R. 209-210.) She also reported that plaintiff indicated that both her otolaryngologist and her hearing aid dispenser no longer felt that her left ear was "aidable." (R. 209.) On October 28, 2008, a physical examination revealed that plaintiff possessed reasonably good communication skills with her hearing aid, assisted by some lip reading, and a chronic problem with accumulation of debris, wax, and moisture in the right ear canal. (R. 212.)

There are gaps in the treatment record concerning plaintiff's hearing impairments from October 2008 through July 2009 and July 2009 through October 2010. (R. 206, 296-297, 303, 380.) In October 2010, the Deaf & Hard Hearing Services Center, Inc. found that plaintiff was deaf, communicating primarily through lip reading, and knew a little sign language. (R. 380.) Plaintiff was given a "Pocket Talker Pro," which worked similarly to a hearing aid, as her old hearing aid "was chewed up by a dog," and an "Alertmaster AM-6000/RX2" to alert her to phone, door, and baby sounds. *Id.* The Center reported that plaintiff's independence was limited without these devices. *Id.* Finally, in November 2010, audiologist Bruce Wagner found that plaintiff suffered severe sensorineural hearing loss in her right ear and profound mixed hearing loss in her left ear. (R. 383.) His examination revealed that plaintiff's hearing loss was slowly worsening over time, that she had very poor speech discrimination in her left ear with 0% discrimination, and that her hearing aid was broken. (R. 382-383.) However, he also found that plaintiff had very good speech discrimination in her right ear with 100% discrimination at 100 dB, could carry on a normal conversation in a quiet environment without a hearing aid if she could see the speaker's lips, and could easily hear normal speech with a hearing aid, with some trouble in a very noisy environment and an inability to determine what direction sounds were

coming from due to her very poor hearing in her left ear. *Id.* He also found that plaintiff's speech reception thresholds were 59 and 90 dB with most comfortable loudness of 90 dB and 100 dB respectively in her right and left ears. (R. 382.)

The Law Judge also assigned significant weight to the opinions of two state agency examiners. (R. 19-20.) Lawrence Schaffzin, M.D. and R.S. Kadian, M.D. opined that plaintiff's condition is moderate, she should avoid concentrated exposure to noise, and that she would be able to understand directions in a quiet work environment and would be aware of normal audio hazards such as alarms. (R. 222-223.) Both opinions disagree with the other state agency opinion of William Amos, M.D., which found that plaintiff's condition meet Listing 2.08A. (R. 213.) The Law Judge assigned greater weight to Dr. Schaffzin's opinion, in part, based on the fact that his specialty is in ophthalmology, while Dr. Amos's specialty is internal medicine. (R. 15, 19.) The opinions of examining physicians can be given greater weight on the basis of their specialty, but ophthalmology concerns the anatomy, physiology, and diseases of the eye.[6] 20 C.F.R. § 404.1527(c) (2012). Accordingly, Dr. Schaffzin's specialty has little to do with plaintiff's alleged impairments, and his evidence should not have been afforded more weight on that basis.

This evidence does provide support for the Law Judge's findings that plaintiff is not as severely limited as she has alleged.[7] However, plaintiff has raised an important question in both the proceedings before the Law Judge and in her brief filed with this court; namely, whether she can afford or can acquire by other means a hearing aid which will reduce the severity of her

---

[6] American Academy of Ophthalmology. http://www.aao.org. Last Accessed March 7, 2013.

[7] Furthermore, plaintiff has engaged in substantial gainful activity during the relevant period. Plaintiff testified that she worked full time in a Marshall's warehouse, and her wages are well over the level for substantial gainful activity. (R. 72-77, 432, 459.) However, plaintiff also testified, and the Law Judge accepted, that she was given special accommodation related to her hearing loss and had assistance from a coworker in going about her duties. (R. 14, 432-435.)

impairment. (Dkt. No. 14, at 4-5.; R. 424-427, 435, 440, 443-446, 454-456, 464-466, 473-474.) Plaintiff testified that her original hearing aid, which she had been using since she was about six years old, stopped working one or two years prior to her hearing before the Law Judge. (R. 443.) She stated that her family helped her buy a new hearing aid, but "That one I could not hear out of." (R. 444.) Moreover, she testified that the hearing aid broke within a year, and the replacement and eventually repaired hearing aid from Wagner Hearing Aid Centers did not improve her hearing. (R. 444-445.) Plaintiff testified that her Pocket Talker worked for awhile, but that she eventually could no longer hear out of it anymore. (R. 454-455.) Plaintiff's aunt, Joyce Thomas, also testified that the Pocket Talker no longer helped her niece hear. (R. 464-465.) Finally, plaintiff testified that she had been told, likely by Wagner, that the only hearing aid which would "work for me right now" is of the type she first acquired when she was a child; specifically one that "goes behind your ear and has a little speaker in your ear." (R. 445-446.)

Plaintiff and Ms. Thomas testified that plaintiff has sought out disability assistance from various government and private groups, so far with limited success. Plaintiff's family was able to help her purchase her original and second set of hearing aids, and the Deaf & Hard Hearing Services Center provided plaintiff with a Pocket Talker Pro and an Alertmaster. (R. 363, 380, 454-455, 466.) The evidence established that, due to budgetary restraints, State disability services could provide only limited assistance to a person of plaintiff's condition, and plaintiff was found too old to receive services from the School for the Deaf in Stanton, Virginia. (R. 465-466, 473-475.) Plaintiff testified that she contacted the Lion's Club of Bridgewater for private assistance in purchasing a hearing aid, but that she was turned down because she was then currently employed. (R. 446.)

There are also other references in the record related to the cost of hearing aids and plaintiff's difficulty in acquiring them. Dr. Farrar-Hersch noted, "[Plaintiff] was fit with a newer model in-the-ear product. It was in need of repair and she did not have the money to have her aid serviced. Since that time, the aid is now lost." (R. 209.) Feta Fernsler of the Deaf & Hard Hearing Services Center stated, "Most insurances do not cover hearing aids and [plaintiff] was provided with the Pocket Talker as an alternative to a hearing aid (as they are expensive)." (R. 380.) Fernsler also reported that plaintiff's old hearing aid "was chewed up by a dog." *Id.* Nearly three weeks later, Bruce Wagner noted that plaintiff's hearing aid was currently broken. (R. 383.)

The Law Judge's RFC determination and his questions to the VE appear to be premised on the notion that plaintiff either already has or can acquire a hearing aid which would substantially reduce the limitations produced by her hearing impairment. (R. 15-20, 480-481, 483, 486.) The Commissioner's counsel agreed that "the [Law Judge's] residual functional capacity determination reflects Plaintiff's remaining hearing ability with the use of hearing aids." (Dkt. No. 16, at 15.) The Law Judge specifically considered plaintiff's testimony that her original hearing aid stopped working about two years prior to the hearing and, ultimately, that she could not hear anything with the assistance either of the hearing aid her family had bought her or the Pocket Talker. (R. 16.) His hypotheticals to the VE also account for plaintiff's claims that "she's been unable to find any hearing aid that would be sufficient to adequately provide her with the capacity to hear normal speech or to be able to hear sounds that would warn her about dangers…" (R. 483.) In response, the VE revealed that no jobs would be available to a person with plaintiff's alleged limitations, as all work would require accommodation. *Id.*

9

However, the Law Judge failed to specifically address either plaintiff's or the VE's testimony concerning her inability to afford or find financial assistance in acquiring the type of hearing aid which could restore her capacity to work in either his RFC determination or in his credibility assessment. A claimant generally must follow a prescribed treatment plan if the treatment will restore their ability to work. 20 C.F.R. § 404.1530. However, a claimant still may be entitled to benefits if he or she provides a "good reason" why he/she has failed to comply with a treatment plan. *Id.* Moreover, the Court of Appeals for the Fourth Circuit has recognized that "It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984); *See also* SSR 82-59, 1982 WL 31384, at *4 (1982). Here, it does not appear that the Law Judge considered whether there was a good reason for plaintiff's not having hearing aids which would permit her to function at the levels the Law Judge found if she did use them. Good cause has been shown to remand this action to the Commissioner who is responsible for making that determination in the first instance. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984) (if the Law Judge did not consider relevant evidence, this court cannot determine whether his decision is supported by substantial evidence); *See also Roberts v. Commissioner of Social Security*, No. 09-2211, 2010 WL 1931136, at *11-12 (D.N.J. May 12, 2010) (finding that it was error for a Law Judge to ignore a claimant's testimony that she could not afford hearing aids). Accordingly, this case should be remanded to the Commissioner to assess whether plaintiff's assertions that she is unable to afford a hearing aid, or acquire one by other means, which would substantially reduce her limitations are credible and sufficiently supported by the record so as to constitute good cause for failure to follow through with her treatment plan.[8]

---

[8] Plaintiff also challenges the Law Judge's finding that she could perform her past

For all these reasons, it is RECOMMENDED that an Order enter GRANTING, in part, the plaintiff's motion for summary judgment, DENYING the Commissioner's motion for summary judgment, and REMANDING this case to the Commissioner for further proceedings.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ [signature]
U.S. Magistrate Judge

3/21/13
Date

---

relevant work as an officer worker, arguing that this job does not meet the standards for past relevant work. (Dkt. No. 14, at 8-9.) Plaintiff points out that she testified that she was not adequately trained during the duration of her past employment as an officer worker, and so she contends that it does not qualify as past relevant work because she did not learn the techniques, acquire necessary information, and develop the facility needed for average performance of the job. *Id.* at 8. Ultimately, this point is moot, however, because the Law Judge proceeding to the final sequential enquiry and found that alternate jobs existed in significant numbers in the national and local economy which plaintiff could perform. (R. 20-22.) Moreover, the undersigned has recommended that the case be remanded on other grounds.